UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEVAS MULTIMEDIA PRIVATE LTD., <br><br> Petitioner, <br><br> v. <br><br> ANTRIX CORP. LTD., <br><br> Respondent. | C18-1360 TSZ <br><br> ORDER |

THIS MATTER comes before the Court on the parties' July 16, 2020, Joint Status Report, docket no. 39, which the Court treated as a motion to lift the stay or, in the alternative, to require Respondent to post security during the stay.  *See* Minute Order (docket no. 40).  Having reviewed the parties' supplemental briefs and declarations, and the exhibits attached thereto, filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

The parties in this case, Petitioner Devas Multimedia Private Ltd. and Respondent Antrix Corp. Ltd., are both Indian corporations, the latter of which is wholly owned by the Indian government.  In 2005, the parties entered the "Agreement for the Lease of

ORDER - 1

Space Segment Capacity on ISRO/Antrix S-Band Spacecraft by Devas Multimedia Pvt. Ltd." dated January 28, 2005 ("Agreement"), by which Respondent agreed to build, launch, and operate two satellites and to make available 70 MHz of S-band spectrum to Petitioner.  Petition to Confirm Foreign Arbitral Award ("Petition") at ¶ 7 (docket no. 1).

Under Article 20 of the Agreement, the parties agreed to refer any disputes to arbitration, providing in relevant part:

> In the event of there being any dispute or difference between the Parties hereto as to any clause or provision of this Agreement or as to the interpretation . . .  such dispute or difference shall be referred to the senior management of both Parties to resolve within three (3) weeks failing which it will be referred to an Arbit[r]al Tribunal comprising of three arbitrators, one to be appointed by each party (i.e. DEVAS and ANTRIX) and the arbitrators so appointed will appoint the third arbitrator.
>
> The seat of Arbitration shall be at NEW DELHI in India.
>
> The Arbitration proceedings shall be held in accordance with the rules and procedures of the ICC (International Chamber of Commerce) or UNCITRAL.
>
> . . .
>
> Any decision or award made by the board of Arbitration shall be final, binding and conclusive on the Parties and entitled to be enforced to the fullest extent permitted by Laws and entered in any court of competent jurisdiction.

Agreement, Hellmann Decl., Ex. 3 (docket no. 2-1 at 124–25).

In February 2011, Respondent allegedly repudiated the Agreement, "destroying" Petitioner's business, and in June 2011, Petitioner commenced arbitration proceedings to recover its losses.  Petition at ¶¶ 12, 17 (docket no. 1).  On September 14, 2015, a three-member arbitral tribunal of the International Chamber of Commerce ("ICC"),[1] based in

---

[1] The ICC panel, referred to by Petitioner as a "blue-ribbon arbitral panel," was comprised of English barrister V.V. (Johnny Veeder), Q.C., former Indian Supreme Court Chief Justice Dr. A.S. Anand, and Professor Michael Pryles of Australia.  Joint Status Report (docket no. 39 at 3 & n.2).

ORDER - 2

New Delhi, issued a final arbitral award ("Award"), holding Respondent accountable for breach of contract and awarding Petitioner $562.5 million plus pre- and post-award interest "for damages caused by [Respondent's] wrongful repudiation." Award, Hellmann Decl., Ex. 1 (docket no. 2-1 at 98); Petition at ¶¶ 27–28 (docket no. 1).

After the Award was issued, Petitioner filed a petition in the High Court of Delhi based in New Delhi to enforce the award under the Indian Arbitration and Conciliation Act, 1996 ("Indian Arbitration Act"). Roy Decl. ¶ 2 (docket no. 42). Respondent then filed a petition to set aside the Award under the Indian Arbitration Act in the City Civil Court based in Bangalore. *Id.* at ¶ 3. In May 2018, the High Court of Delhi dismissed Petitioner's enforcement action for lack of jurisdiction. *Id.* at ¶ 5. Petitioner appealed that decision to the Indian Supreme Court and, during the appeal, successfully sought a stay in the Bangalore proceedings. *Id.* at ¶¶ 5–6. A hearing before the Indian Supreme Court was initially scheduled for April 2020, but the case has not yet been taken up for hearing by that court in light of the COVID-19 pandemic. *Id.* at ¶ 7. To date, the question of whether New Delhi or Bangalore courts have jurisdiction over proceedings concerning the parties' Award remains unresolved. Joint Status Report (docket no. 39 at 2).

On September 13, 2018, Petitioner petitioned this Court to confirm the Award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997 ("New York Convention" or "Convention"), implemented by 9 U.S.C. § 201 *et seq.* Petition at ¶ 43 (docket no. 1); *see also* 28 U.S.C. § 1330(b).

ORDER - 3

In November 2018, the Respondent filed a Motion to Dismiss and Opposition to Confirm Foreign Arbitral Award, docket no. 13, asserting that the action should be dismissed for lack of personal jurisdiction or based on a forum non-conveniens theory; Respondent's motion further asserted that the Award was invalid and violated public policy. The Court concluded that it had jurisdiction under 28 U.S.C. § 1330(b), declined to dismiss the case under the forum non-conveniens doctrine, and stayed this matter for one year pursuant to Article VI of the New York Convention. Minute Order (docket no. 28 at 2).[2] The Court declined to require Respondent to post security during the stay. Minute Order (docket no. 33).

The Court directed the parties to file a joint status report by April 15, 2020. Minute Order (docket no. 28 at 2). On July 16, 2020,[3] the parties filed the instant motion, a Joint Status Report in which they disputed whether the Court should lift or extend the stay, and, if the latter, whether Respondent should be required to post security. Joint Status Report (docket no. 39 at 3–11). The Court treated the Joint Status Report as a motion to lift the stay or, in the alternative, to require Respondent to post security during the stay. Minute Order (docket no. 40).

**Discussion**

Petitioner argues that the Court should lift the stay or, in the alternative, require Respondent to post security. Article VI of the New York Convention provides that a

---

[2] In that order, the Court did not address Respondent's assertion that the Award was invalid or violated public policy. *See* Minute Order (docket no. 28).

[3] The parties twice filed stipulated motions to extend the deadline to submit their joint status report, and the Court granted both motions. *See* Minute Orders (docket nos. 36 & 38).

ORDER - 4

court "may, if it considers it proper, adjourn the decision on the enforcement of the award" while parallel proceedings are pending in the originating forum. *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316 (2d Cir. 1998); *see Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1100 (9th Cir. 2011) (noting that a district court may stay confirmation of an arbitral award for prudential reasons).

Whether a court should exercise its discretion to lift a stay order under Article VI of the New York Convention appears to be an issue of first impression in this circuit. The Second Circuit has held that courts should consider six factors in determining whether a stay is warranted, including:

> (1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
>
> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
>
> (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
>
> (4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;
>
> (5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security . . . ; and
>
> (6) any other circumstances . . . .

*Europcar*, 156 F.3d at 317–18; *accord Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269 (10th Cir. 2020); *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1172 n.7 (11th Cir. 2004). "Because the primary goal of the Convention is to facilitate the recognition and enforcement of arbitral awards, the first and second factor . . . should weigh more heavily in the district court's determination." *Europcar*, 156 F.3d at 318.

Despite Respondent's argument to the contrary, there is simply no reason to consider these factors only in the first instance, when a court initially decides to stay proceedings. These factors are equally relevant to the Court's analysis here, whether the stay is still warranted. Nor is Petitioner required to show that conditions have changed as to warrant relief from the stay. The "changed circumstances" authority on which Respondent relies, *see, e.g.*, *Johnson v. Inos*, 619 F. App'x 651 (9th Cir. 2015) (unpublished), *Tyrer v. City of S. Beloit*, 516 F.3d 659 (7th Cir. 2008), offers little guidance here: None of those cases address the appropriateness of a stay order under the New York Convention, which has the "primary goal . . . to facilitate the recognition and enforcement of arbitral awards." *Europcar*, 156 F.3d at 318. The temporary nature of the Court's stay order also counsels against requiring Petitioner to make an additional showing of changed circumstances.

Accordingly, the six *Europcar* factors guide the Court's determination on whether a stay continues to be warranted in this case. Considering the first factor, there is no question that lifting the stay will further the "general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation," if, as Petitioner asserts, Respondent's set-aside petition pending in Indian

ORDER - 6

courts lacks merit. *See id.* at 317. The Court acknowledges, however, that if Respondent ultimately prevails on its set-aside petition, Respondent must then move to vacate any confirmation order, resulting in even more litigation. *See id.* (concluding that if "there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings"); *see, e.g.*, *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 186–87, 189 (2d Cir. 2017). As a result, the first factor does not assist the Court in deciding whether to lift or extend the stay.

The second factor, the current status of the Indian proceedings and the estimated time for those proceedings to be resolved, weighs heavily in favor of lifting the stay. The dispute arises from conduct in February 2011, and the Award was issued in September 2015. Petition at ¶¶ 12, 23 (docket no. 1). The enforcement and set-aside proceedings in India have been pending since the Award was issued five years ago; and the parties' Joint Status Report provides no estimate of when the Indian courts will resolve the jurisdictional dispute, let alone when they will resolve the underlying merits of those proceedings. Joint Status Report (docket no. 39 at 2–3); *see Hardy Expl. & Prod. (India), Inc. v. Gov't of India, Ministry of Petroleum & Nat. Gas*, 314 F. Supp. 3d 95, 106–108 (D.D.C. 2018) (declining to stay proceedings under Article VI where five years had passed since the award was issued, an Indian court had dismissed the Indian government's set-aside action for lack of jurisdiction, and the delays were largely due to the Indian government and the Indian Supreme Court). This factor, which weighs heavily in the Court's determination, counsels in favor of lifting the stay. *See Europcar*, 156 F.3d at 317–18.

ORDER - 7

The Court next considers the third factor, whether the Award "will receive greater scrutiny" in Indian courts "under a less deferential standard of review." *Europcar*, 156 F.3d at 317.  Respondent does not challenge Petitioner's assertion that "the grounds for setting aside the Award under the Indian Arbitration Act mirror the grounds in the New York Convention."  Petitioner Supp. Br. (docket no. 43 at 11); *see generally* Respondent Supp. Br. (docket no. 41).  Although Respondent previously argued in a footnote that Indian courts "are not limited to the grounds provided in the New York Convention and may consider grounds for invalidating an arbitral award under their own domestic arbitration laws," Respondent Mtn. to Dismiss (docket no. 13 at 8 n.3), neither party has cited authority indicating whether Indian courts consider the same or similar grounds as those provided under Article V of the Convention, the applicable standard here.  *See Hardy*, 314 F. Supp. 3d at 107 (faulting the Indian government for failing to cite authority "indicating that Indian courts have broader discretion when deciding whether to enforce arbitral awards," but "tak[ing] India's word").  This factor does not weigh in favor of lifting or extending the stay.

The fourth factor instructs the Court to examine the "characteristics" of the Indian proceedings.  *Europcar*, 156 F.3d at 318.  Before Petitioner initiated proceedings in this Court, both parties initiated proceedings in Indian courts, Petitioner to enforce the Award and Respondent to set it aside.  Petition at ¶¶ 12, 23 (docket no. 1).  These facts might counsel in favor of extending the stay.  *See Europcar*, 156 F.3d at 317 (concluding that where the petitioner first sought to enforce the award in the originating forum, "the argument for enforcement . . . in the district court loses force because the possibility of conflicting results and the consequent offense to international comity").  On the other

ORDER - 8

hand, Respondent initiated proceedings in Bangalore despite Petitioner's pending action in New Delhi, the designated "seat of Arbitration" under the Agreement. Roy Decl. at ¶¶ 2–3 (docket no. 42); Agreement, Hellmann Decl., Ex. 3 (docket no. 2-1 at 125); *see also Hardy*, 314 F. Supp. 3d at 102 (noting that the New Delhi High Court had concluded that "the seat of arbitration" determined the forum in which to initiate a set-aside petition). Under these facts, there is some indication of "intent to hinder or delay resolution of the dispute," which counsels in favor of lifting the stay. *See Europcar*, 156 F.3d at 318.

The fifth factor, balancing the parties' possible hardships, weighs in favor of lifting the stay. Petitioner alleges that the delayed proceedings have enabled the Indian government to divest Respondent of assets before the Award is enforced. Ahmad Decl. at ¶¶ 24–27 (docket no. 44). Although Respondent denies those allegations, there is little doubt that the delayed enforcement of the Award, particularly given the amount of money at issue, has burdened Petitioner, which to date has not received any "suitable security." *See Europcar*, 156 F.3d at 318; *Hardy*, 314 F. Supp. 3d at 108 ("[G]iven the length of time [petitioner] has waited to receive the award, and the amount of money at issue, [petitioner] would be burdened should the [c]ourt delay confirmation of the award."). This factor counsels in favor of lifting the stay.

Finally, the Court considers any other relevant circumstances under the sixth factor. The Court notes that related proceedings in France, the Netherlands, Switzerland, and the United Kingdom have all proceeded *despite* the ongoing jurisdictional dispute in India. Petition at ¶¶ 34–39; Joint Status Report (docket no. 39 at 9–10). This factor also counsels in favor of lifting the stay.

ORDER - 9

Overall, examination of the *Europcar* factors demonstrates that a stay is no longer warranted in this case. Again, the Court gives considerable weight to the protracted nature of this case—that more than five years have passed since the Award was issued, and nearly ten years have passed since the contract dispute arose. Petition at ¶¶ 12, 23 (docket no. 1). Likewise, since the stay was entered more than one year ago, there have been no new developments in the Indian courts on the jurisdictional issue or on the merits of the proceedings. Joint Status Report (docket no. 39 at 2–3).

In lifting the stay, Petitioner asks this Court to immediately confirm the Award, arguing that an "application to the District Court for confirmation of [an] arbitration award [is] a motion, not a pleading," and that the briefing in this action is complete. Petitioner Supp. Br. (docket no. 43 at 13 & n.5). The Court agrees that the Petition should be treated as a motion. The Ninth Circuit has noted that "[c]onfirmation [of an arbitral award] under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Castro v. Tri Marine Fish Co.*, 921 F.3d 766, 773 (9th Cir. 2019) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)); *see TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 940 (D.C. Cir. 2007) (concluding that a hearing on a petition to confirm an arbitral award under the Convention "will take the form of a summary procedure in the nature of federal motion practice") (citation omitted); *see also Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S 576, 582 (2008) (concluding that applications for orders brought under 9 U.S.C. §§ 9–11 "will get streamlined treatment as a motion" under the Federal Arbitration Act); 9 U.S.C. § 208.

ORDER - 10

The Court concludes that the issues raised in the Petition, Respondent's Motion to Dismiss and Opposition to Petition, the Response, the Reply, and the parties' supplemental briefing, *see* docket nos. 1, 13, 22, 26, 41 & 43, and the declarations and exhibits attached thereto, are ripe for consideration. The Court therefore sets oral argument on the record to determine whether the Petition should be granted or denied.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The motion to lift the stay, docket no. 39, is GRANTED;

(2) Oral argument, which will take place virtually using the ZoomGov.com platform, is hereby SCHEDULED for 10:30 a.m. on Wednesday, October 14, 2020. Counsel will receive an invitation to the Zoom session by email; and

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 17th day of September, 2020.

/s/ Thomas S. Zilly
Thomas S. Zilly
United States District Judge

ORDER - 11