1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

DEVAS MULTIMEDIA PRIVATE
LTD.,

                Petitioner,

    v.

ANTRIX CORP. LTD.,

                Respondent.

C18-1360 TSZ

ORDER

13

14

15

16

17

18

19

20

21

      THIS MATTER comes before the Court on (i) a Motion to Intervene, docket no. 64, brought by CC/Devas (Mauritius) Ltd., Devas Employees Mauritius Private Limited, and Telecom Devas Mauritius Limited, each of which are shareholders of Petitioner Devas Multimedia Private Ltd. ("Intervenors"); (ii) a Motion to Substitute or to Intervene, docket no. 65, brought by Devas Multimedia America, Inc. ("DMA"), a Delaware corporation and direct subsidiary of Petitioner; and (iii) a Motion for a Temporary Restraining Order ("TRO") brought by Intervenors and DMA.  Having held oral argument on February 23, 2021, and having reviewed all papers filed in support of, and in opposition to, the motions, the Court enters the following Order.

22

23

ORDER - 1

**<u>Background</u>**[1]

On November 4, 2020, the Court, having granted the Petition to Confirm Foreign Arbitral Award ("Award"), docket no. 49, entered Judgment in favor of Petitioner and against Respondent Antrix Corp. Ltd. in the amount of $1,293,993.410.15, together with statutory post-judgment interest, docket no. 52.  On November 24, 2020, Respondent timely filed a Notice of Appeal, docket no. 53.

The same day that this Court entered Judgment, the Supreme Court of India ruled that the Delhi High Court had jurisdiction over Respondent's action to set aside the Award.  Babbio Decl. at ¶ 9 & Ex. B (docket no. 68).  A hearing related to that set-aside proceeding is scheduled for tomorrow, February 25, 2021.  *Id.* at ¶ 21 & Ex. N.  Also on the same day this Court entered Judgment, the Indian Ministry of Law and Justice issued an ordinance amending the Indian Arbitration and Conciliation Act of 1996 to require Indian courts to "unconditionally" stay an arbitral award when there is a prima facie showing that the "arbitration agreement or contract which is the basis of the award . . . was induced or effected by fraud or corruption."  *Id.* at ¶ 10 & Ex. C.

On January 19, 2021, the National Company Law Tribunal of India ("NCLT"), in a proceeding brought by Respondent,[2] issued an order stripping Petitioner's Board of Directors of authority and appointing a government official as "Provisional Liquidator"

---

[1] The parties are familiar with the factual background of this case, as summarized in the Court's previous Orders, docket nos. 45 and 49.  The Court therefore does not restate that information here.

[2] The Solicitor General of India represented Respondent at this proceeding.  Babbio Decl. at ¶ 19 & Ex. M.

1   to take over management of Petitioner.  *Id.* at ¶¶ 1, 18–20 & Ex. M.  On February 2,

2   2021, the Provisional Liquidator issued an interim report concluding that the Agreement

3   between Petitioner and Respondent, the breach of which gave rise to the Award, was

4   "initiated by fraud, [and Petitioner] was incorporated with a view to obtain for itself the

5   agreement and to enjoy the fruits of such fraud."  *Id.* at ¶ 24 & Ex. Q.

6          After the Provisional Liquidator took over Petitioner, global counsel who

7   represented Petitioner in connection with the Award were promptly fired.  *Id.* at ¶ 23.

8   That decision included Petitioner's counsel in this matter, Skadden, Arps, Slate, Meagher

9   & Flom LLP and Davis Wright Tremaine LLP, who were directed to cease representation

10  of Petitioner.  Motion to Withdraw (docket no. 55 at 1–2).  On February 9, 2021,

11  Petitioner's counsel filed a Motion to Withdraw, which is currently pending.  *Id.*  For this

12  reason, and contrary to Respondent's argument in its supplemental brief, docket no. 73,

13  Petitioner is not sufficiently represented by U.S. counsel.

14         On February 23, 2021, Intervenors and DMA, jointly or severally, made three oral

15  motions in this Court, a motion to intervene, a motion to substitute or to intervene, and a

16  motion for a TRO.  The Court held oral argument the same day, and directed counsel to

17  file written briefs, supported by documentary evidence, either in support of or in

18  opposition to Intervenors' and DMA's motions.  *See* Minutes (docket no. 63).  The

19  parties timely filed the requested documents.  Intervenors' and DMA's Motions (docket

20  nos. 64, 65, & 69); Response (docket no. 73).

21         On February 24, 2021, the Court electronically received an Affidavit signed by

22  M. Jayakumar, the Provisional Liquidator for Petitioner.  The Court has now filed the

23

Affidavit, docket no. 71, treats it as a pro se motion to intervene and for a 28-day stay of proceedings, and notes it for March 5, 2021.  The Court will consider M. Jayakumar's motion on or after the noting date on March 5, 2021.  *See infra*, Conclusion at ¶ 5.

**Discussion**

### 1.    Jurisdiction

The Court has jurisdiction to rule on the motions at issue.  Although "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), "a court retains jurisdiction to supervise a required course of conduct," including when, "as new facts develop[,] additional supervisory action by the court is required."  *In re Icenhower*, 755 F.3d 1130, 1138 (9th Cir. 2014) (quoting *Hoffman v. Beer Drivers & Salesmen's Loc. Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976)).  For example, a district court retains jurisdiction to modify an injunction while an appeal is pending, so long as "the changes preserve[] the status quo and [do] not materially alter the status of the case on appeal."  *Nat. Res. Def. Council, Inc. (NRDC) v. Sw. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1134 (9th Cir. 2015) (concluding that after a notice of appeal is filed, district courts retain jurisdiction over "ancillary matters").  The Court concludes that this case presents an exception to the jurisdictional transfer principle, as the Court's rulings on the pending motions brought by Intervenors and DMA are necessary to supervise the parties' required course of conduct and to preserve the status quo.

For the avoidance of any doubt, on February 24, 2021, Intervenors and DMA filed emergency motions to intervene in the Ninth Circuit.  *See* Motions (Appeal No. 20-36024) (docket nos. 11, 12).  The Ninth Circuit has now granted the motion and remanded the case to this Court "for the limited purpose of enabling the district court to consider intervenors' motions to intervene, to substitute a party, and to obtain a temporary restraining order."  *See* Order of USCA (docket no. 72).  Thus, under Federal Rule of Civil Procedure 62.1, the Court is expressly authorized to rule on the pending motions.  *See* Fed. R. Civ. P. 62.1(a); *see also* Fed. R. App. P. 12.1.

## 2. Intervenors' Motion to Intervene

"On timely motion, the Court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  The Ninth Circuit has also required that proposed intervenors demonstrate "an independent ground for jurisdiction," but "[w]here the proposed intervenor in a federal-question case brings no new claims," as here, "the jurisdictional concern drops away."  *Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).

Whether a proposed intervenor's motion is timely "is determined by the totality of the circumstances facing would-be intervenors, with a focus on . . . the stage of the proceeding at which the applicant seeks to intervene," "the prejudice to other parties," and "the reason for and length of the delay."  *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016).  In this case, Intervenors and DMA moved to intervene more than two years after Petitioner commenced this action and more than three months after

1    the Court entered Judgment and closed the case.  Notwithstanding this substantial lapse in

2    time, the "major reason" for the Intervenors' motion to intervene is due to a "change of

3    circumstances."  *Id.*  That is, shortly after this Court's Judgment was entered, Respondent

4    successfully petitioned the NCLT to appoint a Provisional Liquidator to take over

5    Petitioner; and earlier this month, the Provisional Liquidator fired Petitioner's counsel in

6    this matter.  *See* Babbio Decl. at ¶¶ 1, 18–20 & Ex. M (docket no. 68).  Two weeks after

7    Petitioner's counsel moved to withdraw, docket no. 55, Intervenors brought the Motion to

8    Intervene, docket no. 64.  Based on this change of circumstances, Intervenors' motion is

9    timely.  Nor is there any indication that the parties will be prejudiced by Intervenors'

10   two-week delay in filing the motion, or that the motion will delay or otherwise affect

11   Respondent's appeal in the Ninth Circuit.  *See Smith*, 830 F.3d at 857.

12          As shareholders of Petitioner, Interveners also show that they have an economic

13   stake in the outcome of this litigation.  *See* 7C Mary Kay Kane, Federal Practice &

14   Procedure § 1911 (3d ed. 2020 update).  Indeed, Intervenors' claims are no different than

15   Petitioner's claim throughout this litigation, and now on appeal to the Ninth Circuit:  This

16   Court's Order confirming the Award and the corresponding Judgment should be

17   affirmed.  The Court is not persuaded by assertion of Respondent, who filed the appeal,

18   that "[t]here are no more 'claims' to pursue in this action."  Response (docket no. 73 at

19   14).  The Motion to Intervene, docket no. 64, is GRANTED as to CC/Devas (Mauritius)

20   Ltd., Devas Employees Mauritius Private Limited, and Telecom Devas Mauritius

21   Limited.

22

23

1      **3.      DMA's Motion to Substitute Petitioner or to Intervene**

2          DMA's Motion to Intervene, docket no. 65, is GRANTED for the same reasons

3    that Intervenors are permitted to intervene.[3]  The Court, however, DEFERS ruling on

4    DMA's Motion to Substitute, docket no. 65.

5      **4.      Intervenors' and DMA's Motion for a TRO**

6          A TRO, as with any preliminary injunctive relief, is an extraordinary remedy,

7    "never awarded as of right."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24

8    (2008).  A party seeking a TRO must establish (1) a likelihood of success on the merits;

9    (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) a balancing

10   of equities tips in favor of a TRO; and (4) an injunction is in the public interest.  *Id.* at 20;

11   *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir.

12   2001) (the standards for a TRO and a preliminary injunction are equivalent).  The Ninth

13   Circuit has also articulated an alternative "sliding scale" approach pursuant to which the

14   first and third *Winter* factors are analyzed on a continuum; under such standard, a weaker

15   showing on the merits, combined with a stronger demonstration on the balancing test,

16   might warrant preliminary injunctive relief, assuming the second and fourth *Winter*

17   elements are met.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35

18   (9th Cir. 2011).  Under this "sliding scale" method, the movant need only raise "serious

19

20   _____

21   [3] Even if Petitioner, as parent, and DMA, as subsidiary constitute "two wholly separate entities with
     individual property rights," *United States v. Bennett*, 621 F.3d 1131, 1137 (9th Cir. 2010), DMA still

22   appears to have an economic stake in the litigation, which is sufficient for purposes of permissive
     intervention.

23

1   questions going to the merits," but the balance of hardships must tip "sharply" in the

2   movant's favor.  *Id.* at 1131–32; *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985,

3   992 (9th Cir. 2019).

4          Intervenors and DMA assert that they are likely to succeed on the merits in

5   obtaining an injunction under the All Writs Act, 28 U.S.C. § 1651, barring Petitioner and

6   Respondent from taking any steps to settle, compromise, or otherwise terminate the

7   Award underlying this Court's Judgment.  *See* Motion for TRO (docket no. 69 at 12–13).

8   Under the All Writs Act, courts have the authority to "issue all writs necessary or

9   appropriate in aid of their respective jurisdictions and agreeable to the usages and

10  principles of law."  28 U.S.C. § 1651.  The United States Supreme Court has repeatedly

11  recognized that courts may use the All Writs Act as necessary or appropriate to effectuate

12  and prevent the frustration of their orders.  *United States v. N.Y. Tel. Co.*, 434 U.S. 159,

13  172 (1977).  Specifically, courts may invoke the All Writs Act to "issue injunctions

14  needed to prevent a controversy from becoming moot."  *Zenith Radio Corp. v. United*

15  *States*, 518 F. Supp. 1347, 1348 (U.S. Ct. Int'l Trade 1981).

16         The Court's earlier Order confirmed the Award, docket no. 49, and Judgment was

17  entered in favor of Petitioner, docket no. 52.  Intervenors are now considering their

18  options to appeal to the Supreme Court of India, challenging the NCLT's order

19  appointing the Provisional Liquidator of Petitioner.  Babbio Decl. at ¶ 26.  If, before

20  Intervenors have the opportunity to challenge the Provisional Liquidator's appointment or

21  authority, Petitioner enters into an agreement with Respondent to vacate the Award or

22  settle the dispute, then Intervenors' potential appeal regarding the Provisional

23

ORDER - 8

1    Liquidator's appointment would become moot.  If Intervenors are unable to appeal, they

2    might lose the ability to collect on the Judgment.  Thus, the alternative remedy that

3    Respondent states Intervenors may pursue—namely relief in the Indian courts—is the

4    very remedy they fear losing if the Court does not issue a TRO.  These facts demonstrate

5    a likelihood that the parties will seek to vacate the Award or settle the dispute, frustrating

6    this Court's Order and Judgment, absent an injunction.  Intervenors and DMA have

7    shown a likelihood of success in obtaining final injunctive relief against Petitioner and

8    Respondent.

9         Intervenors and DMA also assert that they will suffer irreparable harm absent a

10   TRO because they will lose "the benefits of a fair, orderly, and transparent adversarial

11   process" before the Supreme Court of India regarding the Provisional Liquidator's

12   appointment.  Motion for TRO (docket no. 69 at 16).  Courts traditionally define

13   "irreparable harm" as "harm for which there is no adequate legal remedy."  *Ariz. Dream*

14   *Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).  The inability to seek an appeal

15   might constitute such an injury.  *See Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir.

16   1986).  In this case, the failure to secure a TRO might result in preventing Intervenors to

17   file an appeal before the Supreme Court of India, constituting likely irreparable harm.

18        Finally, when deciding whether to issue an injunction, "courts 'must balance the

19   competing claims of injury and must consider the effect on each party of the granting or

20   withholding of the requested relief.'"  *Winter,* 555 U.S. 7, 24 (2008) (quoting *Amoco*

21   *Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).  Courts should also "pay

22   particular regard for the public consequences in employing the extraordinary remedy of

23

1    injunction." *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

2         The balance of the competing claims of Intervenors and DMA, on the one hand,

3    and the parties, on the other, weigh in favor of Intervenors and DMA.  As previously

4    stated, if Intervenors and DMA are not granted the TRO, they might lose the ability to

5    collect on the Judgment.  Petitioner and Respondent, however, will merely be delayed in

6    reaching a settlement that they might or might not be entertaining with the Provisional

7    Liquidator.  Additionally, the Court's consideration of the public interest favors

8    Intervenors and DMA, as nothing in the record suggests that an injunction would affect

9    any non-party; and public policy generally favors enforcing judgments.  *See State Farm*

10   *Mut. Auto. Ins. Co. v. Am. Rehab &Physical Therapy, Inc.*, 376 F. App'x. 182, 184 (3d

11   Cir. 2010) ("The public has an interest in the enforcement of judgments.").

12        Respondent challenges these conclusions, arguing that the fact that Intervenors

13   "sat on their hands and [have] done nothing" to seek relief sooner demonstrates they are

14   unlikely to suffer irreparable injury.  But in the case cited by Respondent, *Lydo Enters. v.*

15   *Las Vegas*, 745 F.2d 1211 (9th Cir. 1984), which involved a much longer delay than the

16   one at issue here, the Ninth Circuit acknowledged that delay in seeking relief is just one

17   factor to consider and noted that it "would be loath to withhold relief solely on that

18   ground." *Id.* at 1213–14.  In addition, Respondent argues that issuing a TRO would

19   violate principles of international comity, citing *Karaha Bodas Co. v. Perusahaan*

20   *Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357 (5th Cir. 2003).  But

21   *Karaha Bodas Co.* concerned a foreign antisuit injunction that presented no real threat to

22   enforcement of the foreign arbitral award in the United States or elsewhere.  *Id.* at 370–

23

1    71.  By contrast here, Intervenors and DMA do not seek to enjoin the set-aside or

2    liquidation proceedings in India; rather, they seek to prevent the Provisional Liquidator

3    from "jeopardiz[ing] enforcement of the Award in the United States."  *In re Karaha*

4    *Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 465 F. Supp. 2d

5    283, 296 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).[4]

6         Because each factor weighs in favor of Intervenors and DMA, the Motion for a

7    TRO is GRANTED in part, as further explained below.

8    **Conclusion**

9         For the foregoing reasons, the Court ORDERS:

10        (1)     Intervenors' Motion to Intervene, docket no. 64, is GRANTED;

11        (2)     DMA's Motion to Intervene, docket no. 65, is GRANTED; DMA's Motion

12   to Substitute, docket no. 65, is DEFERRED;

13        (3)     The Motion for a TRO, docket no. 69, is GRANTED in part.  It is hereby

14   ORDERED that Petitioner, and its shareholders, directors, officers, agents, employees,

15   and legal representatives, are prohibited from:

16             a.     Taking any action with respect to the Award that this Court

17   confirmed (docket no. 49) or this Court's Judgment (docket no. 52) without first

18   obtaining the approval of the Court;

19

20   _____

21   [4] Respondent also argues that an injunction would be frivolous because, even if the Award is set aside by
     India's courts, the Court's Order and Judgment would not automatically become invalid.  Nonetheless,
     the threat of Petitioner being liquidated, or the parties taking any other steps to frustrate the Court's
22   Judgment, constitutes irreparable harm.  *See Nastro v. D'Onoforio*, 263 F. Supp. 2d 446, 459–60
     (D. Conn. 2003).

23

ORDER - 11

1          b.     Entering into any form of agreement with Respondent or any part of

2    its parent state of India with respect to the conduct of litigation respecting the Award

3    without first obtaining the approval of the Court; and

4          c.     Taking any steps in furtherance of any existing agreement with

5    Respondent or any part of its parent state with respect to the conduct of litigation

6    respecting the Award without first obtaining the approval of the Court.

7          Under Federal Rule of Civil Procedure 65(b)(2), a TRO would ordinarily expire

8    within 14 days.  The Court, however, finds good cause to extend the TRO in this matter

9    for an additional 14 days, such that the TRO will not expire until March 24, 2021.

10         (4)     The Courts SETS a hearing for March 23, 2021, at 10:00 a.m., to consider

11   whether to enter a preliminary injunction.  Intervenors' and DMA's Motion for a TRO is

12   hereby CONVERTED to a Motion for Preliminary Injunction and RENOTED to

13   March 19, 2021.  Any response, which shall not exceed 24 pages in length, shall be filed

14   with the Court and served by March 15, 2021.  Any reply, which shall not exceed 12

15   pages in length, shall be filed and served by the noting date, March 19, 2021.

16         (5)     M. Jayakumar's Affidavit, docket no. 71, which has been treated as motion

17   to intervene and for a stay, is NOTED for March 5, 2021.  Any response, which shall not

18   exceed eight (8) pages in length, shall be filed with the Court and served on

19   M. Jayakumar via email at or before 12:00 p.m. (Pacific Standard Time) on March 2,

20   2021.  Any reply by M. Jayakumar, which shall not exceed five (5) pages in length, shall

21   be filed by midnight (Pacific Standard Time) on the noting date, March 5, 2021.  Because

22   the Provisional Liquidator does not have access to the Court's Case Management and

23

Electronic Case File (CM/ECF) system, the reply may be "filed" by timely sending it as an attachment to an email addressed to ZillyOrders@wawd.uscourts.gov.  No other party or proposed party may file materials in this manner.  The Clerk is DIRECTED to send a copy of this Order to M. Jayakumar via email addressed to ol-bangalore-mca@nic.in.

(6)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 24th day of February, 2021.

Thomas S. Zilly
United States District Judge

ORDER - 13