1

2

3

4

5                     UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
6                              AT SEATTLE

7
    DEVAS MULTIMEDIA PRIVATE
8   LTD.,

9                             Petitioner,

10         and

11  DEVAS MULTIMEDIA AMERICA,
    INC.; DEVAS EMPLOYEES
12  MAURITIUS PRIVATE LIMITED;           C18-1360 TSZ
    TELCOM DEVAS MAURITIUS
13  LIMITED; and CC/DEVAS               ORDER ON LIMITED
    (MAURITIUS) LTD.,                   REMAND
14
                              Intervenors.
15
           v.
16
    ANTRIX CORP. LTD.,
17
                             Respondent.
18

19         THIS MATTER comes before the Court on limited remand from the United States

20  Court of Appeals for the Ninth Circuit, directing this Court to consider certain post-

21  judgment motions, docket nos. 64, 65, and 69, brought by Devas Multimedia America,

22  Inc. ("DMAI"), Devas Employees Mauritius Private Limited ("DEMPL"), Telcom Devas

23

1   Mauritius Limited, and CC/Devas (Mauritius) Ltd. (collectively, "Intervenors").  *See*

2   Ninth Circuit Order (docket no. 72).  The Court has also considered an Affidavit, docket

3   no. 71, filed by M. Jayakumar, who has been appointed in India as the Official

4   Provisional Liquidator ("Liquidator") of Petitioner Devas Multimedia Private Ltd.

5   ("Petitioner" or "Devas").  The Court treated the Liquidator's Affidavit as a motion to

6   intervene and stay proceedings.  The Court held oral argument on March 23, 2021, and

7   has reviewed all papers filed in support of, and in opposition to, the pending motions.

8   The Court now enters the following Order.

9   **Background**[1]

10          **1.      Foreign Arbitration Proceedings in India**

11          In January 2005, Petitioner, a corporation formed under the laws of the Republic

12  of India, and Respondent Antrix Corp. Ltd., a corporation wholly owned by the

13  Government of India, entered an "Agreement for the Lease of Space Segment Capacity

14  on ISRO/Antrix S-Band Spacecraft" ("Agreement"), in which Respondent agreed to

15  build, launch, and operate two satellites and to make available 70 MHz of S-band

16  spectrum to Petitioner, which it planned to use to offer hybrid satellite and terrestrial

17  communications services throughout India.  *See* Petition to Confirm Arbitral Award

18  ("Petition") at ¶¶ 1–2 & 7 (docket no. 1).  The parties also agreed to settle any disputes

19  regarding the Agreement through binding arbitration.  Agreement, Ex. 3 to Hellmann

20

21  _____

22  [1] The Court has previously summarized the background facts and procedural history of this matter.  *See*
    Orders (docket nos. 45, 49 & 76).  The Court restates the relevant background information here.

23

Decl. (docket no. 2-1 at 124–25).

In February 2011, Antrix repudiated the Agreement, which allegedly "destroy[ed]" Devas's business.  Petition at ¶ 12.  To enforce its rights under the Agreement, in June 2011, Petitioner commenced arbitration proceedings in accordance with the Rules of Arbitration of the International Chamber of Commerce ("ICC").  *Id.* at ¶ 17.  Respondent refused to participate in the ICC arbitration until May 2013, when the Supreme Court of India held that because Petitioner had properly invoked the Rules of Arbitration of the ICC, the arbitration "initiated thereunder could not be interfered with" by Respondent.  *See* Supreme Court of India Judgment, Ex. 3 to Meehan Decl. (docket no. 15-1 at 24, 54–55).  In September 2015, a three-member ICC panel[2] based in New Delhi issued a final arbitral award ("Award"), concluding that Respondent "wrongful[ly] repudiat[ed]" the Agreement and awarding Petitioner $562.5 million plus interest.  Award at ¶ 401, Ex. 1 to Hellmann Decl. (docket no. 2-1 at 98).  Petitioner then filed an enforcement action in the High Court of Delhi, located in New Delhi.  Roy Decl. at ¶ 2 (docket no. 42).  In November 2015, Respondent filed a petition to set aside the Award in a different court, located in Bangalore.  *Id.* at ¶ 3.  For several years, the parties disputed which court, the one in New Delhi or Bangalore, had jurisdiction over the proceedings concerning the parties' Award.  *Id.* at ¶¶ 4–7.[3]

---

[2] The ICC panel was comprised of English barrister V.V. (Johnny) Veeder, Q.C., former Supreme Court of India Chief Justice Dr. A.S. Anand, and Professor Michael Pryles of Australia.  Joint Status Report (docket no. 39 at 3 & n.2).

[3] While the proceedings in India were pending, Petitioner filed petitions to confirm the Award in the courts of France and the United Kingdom; several of Petitioner's shareholders commenced related

1

### 2.      Award Confirmation Proceedings in the United States

2      In September 2018, Petitioner filed the Petition in this Court to confirm the Award

3 pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral

4 Awards ("New York Convention" or "Convention"), June 10, 1958, 21 U.S.T. 2517,

5 T.I.A.S. No. 6997, as incorporated by statute under 9 U.S.C. § 201.  *See* Petition (docket

6 no. 1).

7      ### A.      Jurisdiction

8      In November 2018, Respondent moved to dismiss this action for lack of personal

9 jurisdiction and based on the doctrine of forum non-conveniens.  The Court denied the

10 motion, concluding that Respondent was subject to the Court's personal jurisdiction

11 pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1330(b).

12 Minute Order at ¶ 1(a) (docket no. 28).  The Court ruled that because Respondent is

13 wholly owned by the Government of India, the Due Process Clause does not apply and

14 statutory personal jurisdiction under FSIA is all that is required.  *Id.*; *see, e.g.*, *First Inv.*

15 *Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 752 (5th

16 Cir. 2012).  The Court also declined to dismiss the action based on the doctrine of forum

17 non-conveniens, concluding that Petitioner had no adequate alternative forum in which to

18 execute on property that Respondent may own in the United States, and that the dismissal

19 would unfairly prejudice Petitioner.  Minute Order at ¶ 1(b) (docket no. 28).  The Court

20

21 ─────────────

22 arbitration proceedings in tribunals located in the Netherlands and Switzerland.  *See* Petition at ¶¶ 34–39; Joint Status Report (docket no. 39 at 9–10).

23

ORDER ON LIMITED REMAND - 4

1   later ruled that, even assuming Respondent was entitled to due process protection, it

2   possessed the requisite "minimum contacts" with the United States, based on

3   Respondent's dealings within the United States, which were related to the parties'

4   Agreement.  *See* Order (docket no. 49 at 6–9); *Gregorian v. Izvestia*, 871 F.2d 1515,

5   1529–30 (9th Cir. 1989) (holding that "the district court properly 'aggregated' all

6   contacts with the United States").

**B.   Stay of Proceedings**

8          In April 2019, the Court, as a matter of comity, exercised its discretion to stay the

9   action under Article VI of the Convention, pending the resolution of Respondent's

10  challenge to the Award in the courts of India.  Minute Order at ¶ 1(c) (docket no. 28).

11         In July 2020, the parties filed a Joint Status Report, docket no. 39, which the Court

12  treated as a motion to lift the stay, or in the alternative, to post security during the stay.

13  *See* Minute Order (docket no. 40).  In September 2020, after reviewing supplemental

14  briefs and declarations, the Court lifted the stay.  *See* Order (docket no. 45).  The Court

15  noted the unusually prolonged nature of this matter—that more than five years had

16  passed since the Award was issued and that nearly ten years had passed since the parties'

17  dispute arose.  *See id.* at 10.  After examining the relevant factors under *Europcar Italia,*

18  *S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316 (2d Cir. 1998), the Court lifted the

19  stay.  *Id*. at 10–11.

**C.   Confirmation of Award**

21         On October 14, 2020, the Court held oral argument regarding the merits of the

22  Petition.  On October 27, 2020, the Court granted the Petition to confirm the Award,

23

ORDER ON LIMITED REMAND - 5

finding no grounds under Article V of the Convention to refuse recognition of the Award. *See* Order (docket no. 49 at 17–18); *see also* 9 U.S.C. § 207 (providing a "court *shall* confirm the award unless it finds one of the grounds for refusal . . . of recognition . . . of the award specified in the . . . Convention") (emphasis added).  The Court found the ICC panel's Award to be exceedingly thorough and well-reasoned, and it rejected Respondent's assertions that the ICC panel appointments violated the Agreement's arbitral procedures, that enforcement of the Award would be contrary to domestic public policy, and that the ICC panel exceeded its powers by failing to apply well-established Indian law.  *See* Order (docket no. 49 at 10–17 & n.7).

On November 4, 2020, the Court entered judgment in favor of Petitioner and against Respondent in the amount of $1,293,993.410.15, together with statutory post-judgment interest, docket no. 52.  Respondent appealed the Court's order and judgment, at which point this Court was divested of jurisdiction over the matters involved in the appeal.

### 3.      Post-Judgment Proceedings in India and the United States

On November 4, 2020, a few weeks after this Court confirmed the Award and on the same day it entered judgment in this matter, the Supreme Court of India finally resolved the parties' underlying jurisdictional dispute, which had been pending in the courts of India since late 2015.  *See* Babbio Decl. at ¶ 9 & Ex. B (docket no. 68); Roy Decl. at ¶ 3 (docket no. 42).  The Supreme Court of India ruled that the High Court of Delhi located in New Delhi (rather than the court located in Bangalore) had jurisdiction over Respondent's action to set aside the Award.  *See* Babbio Decl. at ¶ 9 & Ex. B.  The

1   set aside proceedings remain pending.  *See* Roy Decl. at ¶ 13 (docket no. 92).  On

2   November 9, 2020, India's Registrar of Companies ("ROC") filed an "urgent"

3   application before the High Court of Delhi, noting the "irregularities" that had come to

4   light with respect to Petitioner, and purportedly renewing its earlier attempts to take

5   "coercive steps against" the company.  Babbio Decl. at ¶ 14 & Ex. E.  Those proceedings

6   also remain pending.  *See id.* at ¶¶ 15–17, 27 & Exs. I & S.

7           On January 18, 2021, Respondent filed a petition in the National Company Law

8   Tribunal of India ("NCLT") to liquidate or "wind up" Petitioner, alleging that the parties'

9   Agreement "had been obtained fraudulently and that an immediate wind-up of Devas was

10  the appropriate remedy."[4]  *Id.* at ¶ 18 & Ex. J.

11          The following day, on January 19, 2021, the NCLT held a hearing[5] and issued an

12  order concluding that Respondent had "prima facie proved that [Petitioner] has resorted

13  [to] various frauds, misfeasance, connived with officials etc. in obtaining" the

14  Agreement.  *Id.* at ¶ 20 & Ex. M at ¶ 10.  Just a couple months prior (shortly after this

15  _____

16  [4] The Court notes that, throughout the duration of this action and the underlying arbitration proceedings in
    India, Respondent has never argued that the parties' Agreement was initiated by fraud.  For example,
17  Respondent never once argued before the ICC panel that it was entitled to repudiate the Agreement on the
    basis of fraud or corruption.  *See generally* Award, Ex. 1 to Hellmann Decl. (docket no. 2-1 at 33); Justice
18  V.N. Khare Decl. at ¶ 2(c), Ex. 1 to Motion (docket no. 102 at 9).  Accordingly, the ICC panel noted just
    briefly the "allegations of corruption" surrounding the parties' Agreement, but it also saw "no urgency"
19  on behalf of the Government of India "to revoke the deal even after the law ministry raised serious
    concerns about the proposal, terming it 'illegal.'"  Award at ¶ 120.  Nor did Respondent raise the issue of
20  fraud in *this* Court, at least before the Court confirmed the Award and entered judgment.  *See, e.g.*,
    Hearing Transcript (October 14, 2020) (docket no. 50 at 32) (Respondent's counsel expressly rejecting
21  any notion that he was making "any allegation of misconduct on the part of Devas").  At the most recent
    hearing on March 23, 2021, Respondent's counsel admitted that he did not "believe" the issue of fraud
    was raised during the arbitration or before this Court, at least not until the "last few months."

22  [5] The Solicitor General of India represented Respondent at this proceeding.  Babbio Decl. at ¶ 19.

23

1   Court confirmed the Award), the Indian Arbitration and Conciliation Act of 1996 had

2   been amended to require Indian courts to "unconditionally" stay an arbitral award when a

3   prima facie showing had been made that the "arbitration agreement or contract which is

4   the basis of the award . . . was induced or effected by fraud or corruption." *Id.* at ¶ 10.

5   The NCLT also appointed the Liquidator, who is a government official, to take over

6   Petitioner's "property, effects and actionable claims," effectively stripping Petitioner's

7   board of directors of all control over Petitioner.  Babbio Decl. at ¶¶ 1, 18–20 & Ex. M.

8       On February 2, 2021, the Liquidator issued an interim report, concluding that the

9   Agreement between Petitioner and Respondent, the breach of which gave rise to the

10  Award, was voidable as a result of or "vitiated by fraud, [Petitioner] was incorporated

11  with a view to obtain for itself the agreement and to enjoy the fruits of such fraud." *Id.* at

12  ¶ 24 & Ex. Q at ¶ 32.  After the Liquidator took over Petitioner, he promptly fired global

13  counsel who represented Petitioner in connection with the Award. *See id.* at ¶ 23.  As a

14  result, on February 9, 2021, Petitioner's counsel in this matter moved to withdraw as

15  counsel of record, docket no. 55.  According to one of Petitioner's former board

16  members, Lawrence Babbio, "[t]he Liquidator has not taken any steps, in [his] view, to

17  protect the . . . Award," and "has [ ] not consulted with the board on any substantive

18  decisions regarding the company," but rather his "actions appear to confirm that the

19  NCLT proceedings are aimed at dissolving the Award." *Id.* at ¶ 23.  Respondent

20  disagrees with those assertions. *See* Roy Decl. at ¶ 12 (docket no. 92).

21      On February 23, 2021, three oral motions were presented to this Court, namely a

22  motion to intervene, a motion to substitute or to intervene, and a motion for a temporary

23

1    restraining order ("TRO").  The Court held oral argument the same day, and directed

2    counsel to file written briefs, supported by documentary evidence, either in support of or

3    in opposition to these motions, two of which were made by Intervenors collectively and

4    one of which was brought solely by DMAI.  *See* Minutes (docket no. 63); Motions

5    (docket nos. 64, 65, & 69).  The Court directed counsel to address this Court's

6    jurisdiction in light of the pending appeal.  The next day, on February 24, 2021, the Court

7    received via email the Liquidator's Affidavit, which the Court has treated as a pro se

8    motion to intervene and for a 28-day stay of proceedings.  That same day, the Ninth

9    Circuit granted Intervenors' motion for a limited remand and directed this Court "to

10   consider intervenors' motions to intervene, to substitute a party, and to obtain a [TRO]."

11   Ninth Circuit Order (docket no. 72).  This Court then entered an order granting

12   Intervenors' and DMAI's motions to intervene, docket nos. 64 and 65; deferring DMAI's

13   motion to substitute, docket no. 65; granting, in part, Intervenors' motion for a TRO,

14   docket no. 69; and set a hearing to consider whether to enter a preliminary injunction.

15   *See* Order (docket no. 76).

16           Simultaneously, the parties continued to litigate the pending matters in India,

17   including the set-aside proceedings before the High Court of Delhi and the wind-up

18   proceedings before the NCLT.  On February 25, 2021, the High Court of Delhi held a

19   hearing, with both Petitioner's counsel and Intervenors' counsel present.  Roy Decl. at

20   ¶ 13 & Ex. 13 (docket no. 92).  The High Court ordered the parties to make written

21   submissions and scheduled another hearing in early April 2021.  *Id.*

22

23

1   On February 27, 2021, the Liquidator filed a second report with the NCLT, citing

2   further evidence of fraud and misconduct by Petitioner.  *See* Roy Decl. at ¶ 7 (docket

3   no. 92).  On March 2, 2021, the NCLT held another hearing, at which both Petitioner's

4   counsel and Intervenors' counsel were likewise present; at that hearing, the NCLT

5   clarified its prior order by explaining that the appointment of the Liquidator was "merely

6   an interim order" and that "Devas still ha[d] the right to file its objections."  *Id.* at ¶ 8 &

7   Ex. 11.

8          On March 23, 2021, this Court held oral argument and heard counsel's arguments

9   in connection with the pending motions.  The Court denied the Liquidator's motion

10  without prejudice, denied DMAI's motion to substitute, and took the motion for a

11  preliminary injunction under advisement.  This Order explains the Court's reasons for its

12  prior rulings, as well as the grounds for now denying the motion for a preliminary

13  injunction.

14  **<u>Discussion</u>**

15      **1.     The Liquidator's Motion (docket no. 71)**

16          At oral argument on March 23, 2021, the Liquidator represented that he did not

17  intend to intervene or to stay proceedings in this case, but rather he only sought additional

18  time to appoint replacement counsel on behalf of Petitioner.  More than six weeks have

19  elapsed since the Liquidator directed Petitioner's original counsel to withdraw, *see*

20  Motion to Withdraw (docket no. 55), and more than four weeks have elapsed since the

21  Liquidator initially requested time to appoint replacement counsel.  The Court has

22  already granted the motion to withdraw brought by Petitioner's original counsel.  For

23

ORDER ON LIMITED REMAND - 10

these same reasons, however, the Court denied the Liquidator's motion, docket no. 71,

and directed the Liquidator to timely appoint counsel on behalf of Petitioner in

accordance with Local Civil Rule 83.2(b)(4), which provides that "[a] business entity,

except for a sole proprietorship, must be represented by counsel." *See* Minutes (docket

no. 104).

## 2.     DMAI's Motion to Substitute (docket no. 65)

The Court previously denied DMAI's motion to substitute, docket no. 65, for the

following reasons.  First, DMAI cannot move under Rule 25(c) to substitute (or join)

Petitioner because Petitioner transferred any interest in the Award to DMAI about five

months *before* Petitioner filed this action.  *See* Collection Services Agreement, Ex. T to

Babbio Decl. (docket no. 68-20).  "Rule 25(c) allows substitution only in cases involving

transfers of interest occurring during the pendency of litigation, and not to those

occurring before the litigation begins."  6 *Moore's Federal Practice* § 25.31 (Matthew

Bender 3d ed.).  Second, although the Collection Services Agreement provides that

DMAI "shall have a lien on" 30 percent "of amounts actually collected" by DMAI, it also

provides that Petitioner "shall at all times be the legal and beneficial owner of all funds

collected by" DMAI.  Collection Services Agreement at § 2.4 & Ex. B (docket no. 68-20

at 3, 13).  The Court has serious doubts about whether Petitioner, in executing the

Collection Services Agreement, transferred to DMAI any interest in the Award or the

claims giving rise to this action, within the meaning of Rule 25(c) or otherwise.  *See*

*LiButti v. United States*, 178 F.3d 114, 124–25 (2d Cir. 1999) (concluding that a non-

party could not be substituted or joined under Rule 25(c) because the non-party was not a

1    "successor in interest" to the obligations of the party).  Third, DMAI has not provided the

2    Court with any good reason why its intervention status (rather than substitution for

3    Petitioner) will not allow it to fully present its views to this Court and to the Ninth

4    Circuit.  Finally, DMAI's motion to substitute for Petitioner asks this Court to essentially

5    look into "proverbial crystal ball" and decide whether DMAI or the Liquidator is the

6    proper party to represent Petitioner.  This precise issue is currently being litigated in

7    India.  Even assuming this Court had authority under the New York Convention to decide

8    this issue, it would decline to do so now, as a matter of comity.  *See infra*, Sections 3(A)

9    & 3(C).

10            **3.      Intervenors' Motion for a Preliminary Injunction (docket no. 69)**

11            In light of recent developments in India, and after further consideration of the

12   multifaceted issues involved in this case, the Court denies the motion for a preliminary

13   injunction, docket no. 69.  The standard for issuing a preliminary injunction is identical to

14   the standard that the Court applied in granting the motion for a TRO.  *See* Order (docket

15   no. 76 at 7).  The Court now has the benefit of additional briefing and a more complete

16   record to better evaluate whether Intervenors are likely to succeed on the merits, whether

17   they are likely to suffer irreparable harm in the absence of preliminary relief, whether the

18   balance of equities tips in their favor, and whether an injunction is in the public interest.

19   *See Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citing *Winter v. Nat. Res. Def.*

20   *Council, Inc.*, 555 U.S. 7, 20 (2008)).

21

22

23

1        **A.      Likelihood of Success on the Merits**

2            The Court first considers whether Intervenors are likely to succeed on the merits,

3    recognizing the Court's status as a "secondary-jurisdiction court" in this matter—i.e., its

4    limited role to "enforce, or refuse to enforce," foreign arbitral awards under the New

5    York Convention.  *See Karaha Bodas Co. v. Negara*, 335 F.3d 357, 364 n.19, 373 (5th

6    Cir. 2003); *see also E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991 (9th

7    Cir. 2006) (quoting *Karaha Bodas* for the proposition that the "merits" in these cases are

8    about whether "the factors specific to an anti-suit injunction weigh in favor of granting

9    that injunction here").  "[T]here is nothing in the Convention or implementing legislation

10   that expressly limits the inherent authority of a federal court to grant injunctive relief with

11   respect to a party over whom it has jurisdiction."  *Karaha Bodas*, 335 F.3d at 365.  The

12   Court notes, however, that Intervenors have cited no authority, in which a federal district

13   court, after confirming a foreign arbitral award, subsequently issued an injunction in

14   order to protect its confirmation order and judgment.[6]  Instead, Intervenors rely on the

15   "broad" (but not unlimited) authority granted to district courts to issue injunctions under

16   the All Writs Act, 28 U.S.C. § 1651(a).  *See Negrete v. Allianz Life Ins. Co.*, 523 F.3d

17   1091, 1098 (9th Cir. 2008).  Even assuming that the Court may properly invoke the All

18

19   _____

20   [6] The Court has identified at least one unpublished opinion in which the Ninth Circuit affirmed a district
     court's post-judgment injunction after confirming a $72 million foreign arbitral award.  *See, e.g.*,
     *Smagin v. Yegiazaryan*, 733 F. App'x 393, 394–95 (9th Cir. 2018).  That case is distinguishable, however,

21   because that case involved a "clear, case-specific risk" that the respondent would contravene the district
     court's judgment by "funneling . . . funds" outside the United States.  Moreover, for the reasons described

22   below, the Court concludes that Intervenors have failed to satisfy the other requirements of the
     preliminary injunction test.

23

ORDER ON LIMITED REMAND - 13

1 Writs Act to enjoin Petitioner (now under the apparent control of the Liquidator) from

2 agreeing to a "co-opted" settlement agreement or from otherwise colluding with

3 Respondent, *see id.* at 1099, the Court is reluctant to do so, given its secondary status in

4 this foreign arbitral confirmation action.

### B.   Likelihood of Irreparable Harm

6 More critically, Intervenors have failed to sustain their burden to show irreparable

7 harm in the absence of the injunctive relief they seek. *Alliance for the Wild Rockies v.*

8 *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("*Winter* tells us that plaintiffs may not

9 obtain a preliminary injunction unless they can show that irreparable harm is likely to

10 result in the absence of the injunction."). Intervenors argue, and the Court previously

11 concluded, that the "threat of [Petitioner] being liquidated, or the parties taking any other

12 steps to frustrate" the Judgment constitutes irreparable harm. Reply (docket no. 98 at

13 11); *see* Order (docket no. 76 at 11 n.4).

14 The Court issued the TRO to prevent actions that would cause Petitioner to be

15 unfairly liquidated or actions that would otherwise undermine Petitioner's and

16 Intervenors' pending appeal in India. *See* Order (docket no. 76 at 9–11). In issuing the

17 TRO, the Court relied on evidence that Petitioner, its Award, and this Court's judgment

18 were under existential threat:  In mid-January 2021, Respondent filed a petition to wind

19 up Petitioner on the ground that the parties' Agreement had been fraudulently obtained

20 (even though Respondent had never made that argument before the ICC panel or this

21 Court). *See* Babbio Decl. at ¶ 18 (docket no. 68); *supra*, footnote 5. The following day,

22 the NCLT stripped Petitioner's board of directors of any authority to control Petitioner,

23

and appointed the Liquidator to "take into his . . . custody or control all property, effects

and actionable claims" of Petitioner.  *Id.* at ¶¶ 1, 20 & Ex. M.  Within a matter of weeks,

the Liquidator fired Petitioner's global counsel in actions involving the Award, and the

Liquidator further concluded that the Agreement was "vitiated by fraud" and that

Petitioner "was incorporated with the view to obtain for itself the [A]greement and to

enjoy the fruits of fraud."  *See id.* at ¶¶ 23–24 & Exs. P & Q.  The Liquidator did not

authorize Petitioner to appeal the NCLT's ruling, requiring DEMPL to file the appeal on

Petitioner's behalf.  *Id.* at ¶ 25 & Ex. R.  Indeed, a former Chief Justice of the Supreme

Court of India, Justice V.N. Khare, has represented to this Court that, in his "entire legal

career and experience," he has not witnessed a wind-up proceeding as the one leveled

against Petitioner, that the "current proceedings [are] unusual and against the

fundamental principles of natural justice . . . enshrined in the Constitution of India," and

that the proceedings are not "*bona fide*."  Justice V.N. Khare Decl. at ¶¶ 4–5, Ex. 1 to

Motion (docket no. 102 at 11); *see also* Babbio Decl. at ¶ 22 & Ex. O (*Bloomberg Quint*

article from January 21, 2021, describing the "Government's 'Winding-up' Move" as

either a "Masterstroke" or a "Desperate Attempt").  Such actions, taken to undermine a

litigant's right to an appeal or its ability to defend itself in foreign courts, could, in and of

themselves, amount to irreparable harm.  *See, e.g.*, *Artukovic v. Rison*, 784 F.2d 1354,

1356 (9th Cir. 1986).

        Before and after the TRO was issued, however, Intervenors' counsel have actively

participated in both the set-aside proceedings and the liquidation proceedings currently

pending in India.  *See* Roy Decl. at ¶¶ 7–8, 13; Babbio Decl. at ¶¶ 25–26.  Intervenors

effectively concede that they are "not currently 'being denied an adversarial process in India,'" Reply (docket no. 98 at 11), and have now supplemented the record with declarations describing their continued involvement in those proceedings. *See* Champion Decl. at ¶ 2, Ex. 2 to Motion (docket no. 102 at 19); Dutt Decl., Ex. 1 to Motion (docket no. 103-1 at 2–4). Intervenors' continued involvement in the foreign proceedings, as well as the media's transparent coverage of those proceedings, *see* Babbio Decl. at ¶¶ 12, 22 & Exs. D, O, serve as powerful checks against any purported misconduct on the part of the Liquidator or Respondent. The Court is satisfied that Intervenors' participation in the proceedings in India may work to mitigate any threat of irreparable harm to them or Petitioner.

Further, in the event the Award is set aside by the Supreme Court of India, Respondent will still be required to file a motion in this Court to vacate the confirmation order and judgment, and Intervenors will have an opportunity to respond to any such motion. *See* Fed. R. Civ. P. 60(b). In other words, even assuming that Petitioner or Intervenors are somehow deprived of an adversarial process in India, the Court retains the discretion to refuse to vacate its order and judgment. *See Karaha Bodas*, 335 F.3d at 369, 374 (explaining that secondary-jurisdiction courts "have discretion under the Convention to enforce an award despite an annulment in another country[ ] and have exercised that discretion in the past").

### C.    Balancing the Equities and Public Interests

In "balanc[ing] domestic judicial interests against concerns of international comity," the Court concludes that the balance of equities also tips in favor of denying the

1    motion.  *See Karaha Bodas*, 335 F.3d at 366, 371–74; *see also E. & J. Gallo Winery*, 446

2    F.3d at 990–91 (adopting the Fifth Circuit's modified test for antisuit injunctions, which

3    "by its nature, will involve detailed analysis of international comity").   In *Karaha Bodas*,

4    the Fifth Circuit concluded that "it is not the district court's burden . . . to protect [a

5    prevailing petitioner] from all the legal hardships it might undergo in a foreign country as

6    a result of this foreign arbitration." *Id.* at 369.  It further concluded that the district

7    court's injunction—although issued to avoid "vexatious litigation" in a foreign forum—

8    nonetheless risked upsetting "interests in preserving comity among nations" where (i) one

9    of the parties was "wholly owned by" a foreign government, (ii) the injunction

10   "effectively translate[d] into an attempt to enjoin the [foreign] court," and (iii) "allowing

11   such an injunction . . . set an undesirable precedent under the Convention, permitting a

12   secondary jurisdiction to impose penalties on a party when it disagrees with that party's

13   attempt to challenge an award in another country." *Id.* at 372–73.

14          The Court finds that the Fifth Circuit's reasoning in *Karaha Bodas* is also relevant

15   here, particularly given that Respondent is wholly owned by the Government of India,

16   Petitioner is currently under the apparent control of a government-appointed Liquidator,

17   and related proceedings are actively being litigated in the courts of India—courts that

18   have primary jurisdiction with respect to this foreign arbitral enforcement action.

19   Although substantial evidence suggests that collusive conduct may be afoot, *see supra*,

20   Section 3(B), thereby frustrating this Court's interests in "prevent[ing] vexatious or

21   oppressive litigation" in a foreign forum and in "protect[ing] [its] jurisdiction," the Court

22   concludes that the "interests in preserving international comity" should carry great weight

23

1   in this case.  *See Karaha Bodas*, 335 F.3d at 371–74; *cf. E. & J. Gallo Winery*, 446 F.3d

2   at 993 (concluding that an antisuit injunction was warranted where a party pursued

3   foreign litigation in violation of the parties' forum-selection clause and where the foreign

4   litigation was likely "vexatious and oppressive").

5         Because the Court concludes that Intervenors have not sustained their burden to

6   show a likelihood of irreparable harm in the absence of the injunctive relief they seek,

7   and that international comity concerns counsel against a preliminary injunction, the Court

8   DENIES the motion for a preliminary injunction.[7]

9   **Conclusion**

10        For the foregoing reasons:

11        (1)    The Provisional Liquidator's motion to intervene and to stay proceedings,

12  docket no. 71, was DENIED without prejudice;

13        (2)    DMAI's motion to substitute or to intervene, docket no. 65, was

14  GRANTED in part and DENIED in part.  DMAI remains an Intervenor in this case but is

15  not substituted or joined as Petitioner;

16        (3)    Intervenors' motion for a preliminary injunction, *see* docket nos. 69 & 76,

17  is DENIED; and

18

19

20

21  [7] Intervenors have asked this Court to hold an evidentiary hearing to assess Respondent's allegations of fraud against Petitioner.  *See* Reply (docket no. 98 at 13).  Even if this matter were not on appeal and

22  the Court had jurisdiction to consider the issue, the Court would decline to do so at this time.

23  ORDER ON LIMITED REMAND - 18

1         (4)    The Clerk is directed to send a copy of this Order to all counsel of record,

2  to the Liquidator via email addressed to ol-bangalore-mca@nic.in, and to the United

3  States Court of Appeals for the Ninth Circuit (Case No. 20-36024).

4         IT IS SO ORDERED.

5         Dated this 29th day of March, 2021.

Thomas S. Zilly
United States District Judge

ORDER ON LIMITED REMAND - 19