1

2

3

4

5                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
6                                    AT SEATTLE

7   DEVAS MULTIMEDIA PRIVATE
    LTD.,
8
                         Petitioner,
9
          and
10
    DEVAS MULTIMEDIA AMERICA,
11  INC.; DEVAS EMPLOYEES
    MAURITIUS PRIVATE LIMITED;          C18-1360 TSZ
12  TELCOM DEVAS MAURITIUS
    LIMITED; and CC/DEVAS               ORDER
13  (MAURITIUS) LTD.,

14                       Intervenor-Petitioners,
          v.
15
    ANTRIX CORP. LTD.,
16
                         Respondent.
17

18         THIS MATTER comes before the Court on Intervenor-Petitioners' motion to

19  compel discovery, docket no. 112, and Respondent Antrix Corp. Ltd.'s motion for a

20  protective order, docket no. 115.  Having reviewed all papers filed in support of, and in

21  opposition to, the motions, the Court enters the following Order.

22

23

ORDER - 1

**<u>Background</u>**[1]

In November 2020, the Court entered an order confirming the foreign arbitral award at issue ("Award") and entered a $1.29 billion judgment ("Judgment") in favor of Petitioner Devas Multimedia Private Ltd. and against Respondent.  Respondent appealed the Court's order, *see* Notice of Appeal (docket no. 53), but to date, Respondent has not paid the Judgment, sought to stay enforcement of the Judgment, or posted a supersedeas bond.  *See* Champion Decl. at ¶ 33 (docket no. 114).

On January 18, 2021, Respondent petitioned the National Company Law Tribunal ("NCLT") in India to "wind up" or liquidate Petitioner based on newfound allegations of fraud and illegality.  *See* Babbio Decl. at ¶ 18 (docket no. 68).  The NCLT granted Respondent's petition the following day, appointing M. Jayakumar as the provisional Liquidator to take over Petitioner and prepare its liquidation.  *Id.* at ¶ 20.  The Liquidator promptly fired Petitioner's global counsel, prompting Petitioner's shareholders, Devas Multimedia America, Inc. ("DMAI"), Devas Employees Mauritius Private Limited ("DEMPL"), Telcom Devas Mauritius Limited ("Telcom Devas"), and CC/Devas (Mauritius) Ltd. ("CC/Devas") (collectively, "Intervenors"), to intervene in this action to defend the Court's confirmation order and Judgment.  *Id.* at ¶¶ 23, 26–28.  The Court granted their motion to intervene.  *See* Order (docket no. 76).

---

[1] Because the parties are familiar with the facts and procedural history, the Court recounts only the relevant background information here.  *See* Orders (docket nos. 45, 49, 72, 76, & 108) (summarizing background facts and procedural history).

In late May 2021, the NCLT issued a final liquidation order, appointed M. Jayakumar as the official Liquidator, and ordered him to liquidate Petitioner. NCLT Winding Up Order, Ex. 1 to Dutt Decl. (docket no. 113-1). The NCLT also ruled that DEMPL, an Intervenor in this action, could not join or intervene in the NCLT liquidation proceedings. NCLT Implead Order, Ex. 2 to Dutt Decl. (docket no. 113-2).

Intervenors believe that Respondent has been transferring certain business assets to a new company, NewSpace India Limited ("NewSpace"), which, like Respondent, is wholly owned by the Government of India and is under the direct control of India's Department of Space ("DOS"). DOS Annual Report 2020–2021, Ex. 2 to Champion Decl. (docket no. 114-2 at 97); *see* April 2019 Article, Ex. 9 to Champion Decl. (docket no. 114-9 at 7) (reporting that certain individuals believe "Antrix is being hollowed out," as its business dealings are being "shifted" to NewSpace, possibly "due to the Devas, Deutsche Telekom, Columbia Capital and Telecom Ventures liability claims").

On May 24, 2021, Intervenors served Respondent with discovery requests, consisting of seven interrogatories, ten requests for production ("RFPs"), and a notice of deposition, relating to Respondent's assets and purported alter egos. *See* Interrog. & RFPs, Ex. 28 to Champion Decl. (docket no. 114-28). Respondent objected to these requests, *see* Champion Decl. at ¶ 31, but responded that Respondent does not maintain any financial accounts in the United States and that it owns approximately $186,000 in old receivables owed by U.S. companies, *see* Resp. & Obj. to Interrog. & RFPs, Ex. C to Meehan Decl. (docket no. 116-3). The parties have attempted to resolve this discovery dispute without Court intervention, but Respondent maintains that Intervenors lack the

1  authority to seek postjudgment discovery and that the scope of the requested discovery is

2  overbroad and unduly burdensome.  *See* Champion Decl. at ¶¶ 32–33; Meehan Decl. at

3  ¶¶ 8–9.  Intervenors now move to compel discovery, docket no. 112, and Respondent

4  moves for a protective order, docket no. 115.

5  **Discussion**

6      **1.      Jurisdiction**

7      "Once a notice of appeal is filed, the district court is divested of jurisdiction over

8  matters being appealed."  *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163,

9  1166 (9th Cir. 2001) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58

10 (1982) (per curiam)).  Federal Rule of Civil Procedure 62.1 limits the actions a district

11 court may take when it "lacks authority to grant [certain motions] because of an appeal

12 that has been docketed and is pending."  Fed. R. Civ. P. 62.1(a).  The district court

13 nevertheless "retains jurisdiction during the pendency of an appeal to act to preserve the

14 status quo."  *Nat. Res. Def. Council*, 242 F.3d at 1166.

15     Despite the pending appeal, this Court's authority is not confined to the actions

16 listed in Federal Rule of Civil Procedure 62.1 because the parties' pending motions do

17 not raise any issues that are currently on appeal.  Moreover, resolving such motions will

18 "preserve[] the status quo and [will] not materially alter the status of the case on appeal."

19 *See Nat. Res. Def. Council*, 242 F.3d at 1166; *see also Icenhower v. Diaz-Barba (In re*

20 *Icenhower)*, 755 F.3d 1130, 1138 (9th Cir. 2014) (concluding bankruptcy court "retained

21 jurisdiction to supervise the course of conduct mandated in the judgment" and "[t]o

22

23

ORDER - 4

1  account for . . . changed facts" after judgment was entered).  The Court has jurisdiction to

2  decide the instant motions.

3  ### 2.  Postjudgment Discovery Standard

4  Federal Rule of Civil Procedure 69(a)(2) provides that, "[i]n aid of the judgment

5  or execution, the judgment creditor or a successor in interest whose interest appears of

6  record may obtain discovery from any person--including the judgment debtor--as

7  provided in these rules or by the procedure of the state where the court is located."

8  Fed. R. Civ. P. 62(a)(2); *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery

9  regarding any nonprivileged matter that is relevant to any party's claim or defense and

10 proportional to the needs of the case.").  These "rules governing discovery in

11 postjudgment execution proceedings are quite permissive."  *Republic of Argentina v.*

12 *NML Capital, Ltd.*, 573 U.S. 134, 138 (2014).  A judgment creditor or successor in

13 interest "has a right to conduct reasonable post-judgment discovery and to inquire into [a

14 judgment debtor's] assets," including "a very thorough examination of the judgment

15 debtor."  *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998)

16 (internal quotation marks and citation omitted).

17 Likewise, under the Washington Superior Court Civil Rules ("CR"), which

18 Federal Rule of Civil Procedure 69(a)(2) incorporates, a judgment creditor may take a

19 judgment debtor's deposition "anywhere at any time, and if the debtor objects to the time

20 and place, the burden is on them to seek a protective order."  *See Ward v. Icicle Seafoods*,

21 No. C06-431JLR, 2008 WL 11506711, at *2 (W.D. Wash. Feb. 19, 2008) (citing

22 CR 26(c), 30(b)(1), & 69(b) ("In the aid of the judgment or execution, the judgment

23

ORDER - 5

creditor or successor in interest when that interest appears of record, may examine any person, including the judgment debtor.")).

### 3. Intervenors' Authority to Seek Postjudgment Discovery

The parties dispute whether Intervenors are "judgment creditors" or "successors in interest" within the meaning of the applicable procedural rules, and whether a party *must* be a judgment creditor or successor in interest to seek postjudgment discovery. Intervenors DEMPL, Telecom Devas, and CC/Devas argue that as shareholders of Petitioner, they are Petitioner's successors in interest.  Intervenor DMAI argues that it is a judgment creditor based on its collection services agreement with Petitioner. Furthermore, according to Intervenors, because they are parties to this action, the Court has the inherent authority to permit them to examine Respondent about its assets, regardless of their specific status under the applicable procedural rules.  The Court addresses each argument in turn.

### A. Whether Intervenors DEMPL, Telcom Devas, and CC/Devas are Successors in Interest

Intervenors DEMPL, Telcom Devas, and CC/Devas, as Petitioner's Mauritian shareholders, contend that, because they are entitled to Petitioner's assets once it is liquidated (subject to creditors' claims), they are successors in interest within the meaning of Federal Rule of Civil Procedure 69(a)(2).

A "successor in interest" is defined as "[s]omeone who follows another in ownership or control of property."  *Successor In Interest*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Under Washington law, the ownership of stock in a company "carries

1   with it the inherent right to participate in the control of the corporation, . . . and the

2   inherent right to share in the assets of the corporation—after creditors—when it is in the

3   process of dissolution." *Deer Park Pine Indus. v. Stevens County*, 46 Wn.2d 852, 855–

4   56, 286 P.2d 98 (1955); *see also James S. Black & Co., Inc. v. F.W. Woolworth Co.*, 14

5   Wn. App. 602, 606, 544 P.2d 112 (1975) (permitting shareholders, as dissolved

6   corporation's "successors in interest," to join dissolved corporation as plaintiffs in

7   lawsuit).

8         Respondent appears to concede that Intervenors have "contingent or future interest

9   in proceeds from [Petitioner's] dissolution or liquidation," but argues that such interests

10  do not convert Intervenors into "successors in interest" for purposes Federal Rule of Civil

11  Procedure 69(a)(2).  *See* Resp. to Mot. to Compel (docket no. 119 at 10).  Respondent

12  relies on unpublished, non-Washington case law, arguing that Intervenors never

13  possessed any right to bring this action in their own name, as the "right to pursue a cause

14  of action either belongs to the dissolved corporation or no longer exists; at no time does it

15  pass to another party." *See id.* (citing, *inter alia*, *Mikkilineni v. United States*, 53 F.

16  App'x 82, 83 (Fed. Cir. 2002), and *Cohen v. Ford Motor Co.*, No. 1:91CV2148, 1992

17  WL 46104, at *2 (N.D. Ohio Feb. 10, 1992) (concluding that a shareholder may not

18  institute a lawsuit on a dissolved corporation's behalf until the "corporation has paid all

19  its creditors" and the shareholder "succeed[s] to the interests of the corporation")).  These

20  authorities, however, appear to be in conflict with Washington law and Federal Rule of

21  Civil Procedure 69(a)(2)'s incorporation of the state's procedural rules. *See James S.*

22  *Black*, 14 Wn. App. at 606.  Nor do Respondent's authorities directly address whether

23

1  shareholders of a soon-to-be-dissolved corporation are successors in interest for purposes

2  of seeking discovery to aid in the execution of a Judgment.[2]

3          In light of the permissive rules governing postjudgment discovery, the Court

4  concludes that the future, contingent interests held by Intervenors DEMPL, Telcom

5  Devas, and CC/Devas in Petitioner's assets (once Petitioner is wound up and satisfies its

6  creditors' claims), including any interest in the Judgment, are sufficient to show that

7  these Intervenors are successors in interest for purposes of Federal Rule of Civil

8  Procedure 69(a)(2) and are therefore entitled to obtain discovery to enforce execution of

9  the Judgment.

10                    **B.      Whether Intervenor DMAI is a Judgment Creditor**

11         Intervenor DMAI argues that it is a judgment creditor under Federal Rule of Civil

12  Procedure 69(a)(2) based on the Collection Services Agreement ("CSA") that it executed

13  with Petitioner in early 2018.  The Court previously had "serious doubts about whether

14  Petitioner, in executing the [CSA], transferred to DMAI any interest in the Award or the

15  claims giving rise to this action."  Order (docket no. 108 at 11).  Nevertheless, the Court

16  denied DMAI's motion to substitute or join Petitioner for the primary reason that the

17

18  [2] Respondent also appears to question shareholders' rights under Indian law, namely whether shareholders

19  "have the right to all of [Petitioner's] residual proceeds after [Petitioner] is wound up," including "the
    proceeds from any judgment arising out of the . . . Award and the sale thereof." Dutt Decl. at ¶¶ 8–9
    (docket no. 113).  Respondent contends that shareholders "do not have any inherent right in the assets of"

20  Petitioner, and once Petitioner "is in liquidation, only the liquidator retains [Petitioner's] rights and
    powers, so the liquidator decides how to distribute its assets consistent with Indian law."  John Decl. at

21  ¶¶ 1–5, 9–10 (docket no. 121).  For purposes of the instant motions, however, the Court need not address
    which party's understanding of Indian law is correct because Federal Rule of Civil Procedure 69 directs
    the Court to consult the other federal procedural rules "or the procedure of the state where the court is

22  located."  Fed. R. Civ. P. 69(a)(2).

23

CSA was executed several months *before* this action commenced, and Federal Rule of

Civil Procedure 25(c) "allows for substitution only in cases involving transfers of interest

occurring during the pendency of litigation, but it does not apply to transfers "occurring

before the litigation begins."  Order (docket no. 108 at 11) (quoting 6 *Moore's Federal*

*Practice* § 25.31 (Matthew Bender 3d ed.)).  The Court's prior order, did not, however,

directly resolve whether the CSA conferred any right in DMAI to *seek discovery* to

enforce execution of the Judgment under Federal Rule of Civil Procedure 69(a)(2).

A "judgment creditor" is defined as "[a] person having a legal right to enforce

execution of a judgment for a specific sum of money."  *Judgment Creditor*, BLACK'S

LAW DICTIONARY (11th ed. 2019).  As a matter of Washington law, any "party in whose

favor a judgment of a court has been or may be filed or rendered, or the assignee or the

current holder thereof, may have an execution . . . or other legal process issued for the

collection or enforcement of the judgment at any time within ten years from entry of the

judgment or the filing of the judgment in this state."  RCW 6.17.020; *see also*

RCW 6.17.030 (providing "when a judgment recovered in any court of this state has been

assigned, execution may issue in the name of the assignee after" certain steps are taken).

The CSA provides that DMAI will "[t]ake all actions necessary to protect, defend

and enforce the Award, including searching for and, to the extent possible, attaching

assets for the purposes of collecting any outstanding amounts on the Award" and "shall

use best efforts to provide Collection Services."  CSA at §§ 2.2(b) & 2.3, Ex. T to Babbio

Decl. (docket no. 68-20 at 3).  Although the CSA provides that Petitioner "shall at all

times be the legal and beneficial owner of all funds collected" and that DMAI shall hold

ORDER - 9

such funds "for the benefit of" Petitioner, the CSA also provides that DMAI "shall have a

lien on" 30 percent of amounts actually collected "until the disbursement" of such

amounts.  *Id.* at § 2.4 & Ex. B.

The Court is persuaded that the CSA assigns DMAI a legal right to enforce

execution of Judgment for a specific sum of money, namely 30 percent of any collected

amounts, and that DMAI can therefore avail itself of Washington's legal processes for the

collection or enforcement of the Judgment.  *See* RCW 6.17.020 & .030.  Regardless of

whether the CSA creates a contractual *obligation* or *right* on the part of DMAI, there is

little doubt that the CSA authorizes DMAI to "[t]ake all actions necessary to protect,

defend and enforce the Award, including searching for and . . . attaching assets for the

purposes of collecting any outstanding amounts on the Award."  CSA at § 2.2(b).[3]  The

Court concludes that DMAI is a judgment creditor within the meaning of Federal Rule of

Civil Procedure 69(a)(2) and can therefore obtain, for purposes of executing on the

Judgment, discovery related to Respondent's assets.

## C.    Inherent Authority to Order Postjudgment Discovery

Intervenors also contend that, irrespective of Federal Rule of Civil Procedure

69(a)(2), this Court has the inherent authority to permit Intervenors to seek postjudgment

discovery.  Although district courts possess "inherent powers" that are "necessarily

---

[3] Respondent also argues that DMAI is not a "legal representative" of Petitioner under § 41 of the Restatement of Judgments.  For purposes of whether Intervenors are entitled to postjudgment discovery of Federal Rule of Civil Procedure 69(a)(2), the Court need not decide whether DMAI is a legal representative of Petitioner.

1    vested in courts to manage their own affairs so as to achieve the orderly and expeditious

2    disposition of cases," the U.S. Supreme Court recognizes certain limits on those powers.

3    *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1891 (2016) (quoting *Link v. Wabash R.R. Co.*, 370

4    U.S. 626 (1962)).  "First, the exercise of an inherent power must be a 'reasonable

5    response to the problems and needs' confronting the court's fair administration of justice"

6    and "[s]econd, the exercise of an inherent power cannot be contrary to any express grant

7    of or limitation on the district court's power contained in a rule or statue."  *Id.* at 1892

8    (quoting *Degen v. United States*, 517 U.S. 820, 823–24 (1996)).

9         In light of the unique circumstances in this case, the Court concludes that

10   authorizing Intervenors to seek postjudgment discovery to enforce execution of the

11   Judgment on behalf of Petitioner is a reasonable response to the problems and needs

12   confronting the Court's fair administration of justice.  Petitioner is in the process of being

13   liquidated under the auspices of a court-appointed Liquidator.  NCLT Winding Up Order,

14   Ex. 1 to Dutt Decl. (docket no. 113-1).  Although the Liquidator has now hired new

15   counsel to represent Petitioner, at the direction of the Court and in compliance with Local

16   Civil Rule 83.2(b)(4), the first motion filed by this new counsel was an apparent attempt

17   to delay the proceedings.  *See* Minute Order (docket no. 132).  Because Petitioner is

18   hindered in its ability to seek postjudgment discovery or to execute the Judgment, the

19   responsibility has fallen to Intervenors to do so.

20        Furthermore, the Court's exercise of its inherent power to authorize Intervenors to

21   obtain such discovery is not contrary to any express grant of or limitation on the Court's

22   authority contained in the applicable rules or statutes.  Respondent argues that Federal

23

1   Rule of Civil Procedure 69(a)(2) permits *only* "a judgment creditor or a successor in

2   interest" to obtain postjudgment discovery, but Respondent would have the Court read

3   the word "only" into that provision, a word that is plainly not there.  Nor does that rule

4   limit (or even address) *the Court's* authority to permit, as opposed to a party's ability to

5   seek, postjudgment discovery.  Given the absence of any indication that ordering the

6   requested discovery would conflict with the Federal Rules of Civil Procedure or

7   applicable laws, the Court exercises its inherent authority to permit Intervenors to obtain

8   postjudgment discovery based on the unusual facts of this case and as a matter of fairness

9   and justice.

10       **4.    Scope of Intervenors' Discovery Requests**

11       Respondent moves for a protective order under Federal Rule of Civil

12   Procedure 26(c) "to protect [itself] from annoyance, embarrassment, oppression, or undue

13   burden or expense."  Fed. R. Civ. P. 26(c)(1); *see Blum v. Merrill Lynch Pierce Fenner &*

14   *Smith Inc.*, 712 F.3d 1349, 1355 (9th Cir. 2013) ("A party asserting good cause bears the

15   burden, for each particular document [it] seeks to protect, of showing that specific

16   prejudice or harm will result . . . ." (citation omitted)).

17       Respondent makes general and specific objections to Intervenors' discovery

18   requests, principally arguing that such requests exceed the scope of permissible

19   discovery.   *See* Resp. & Obj. to Interrog. & RFPs, Ex. C to Meehan Decl. (docket

20   no. 116-3).  Intervenors respond that they made reasonable concessions during the

21   parties' meet-and-confer process to narrow the breadth of these requests both in terms of

22   time and subject matter, and that Respondent refused to even propose any further

23

1    revisions.  *See* Resp. to Mot. for Prot. Ord. (docket no. 117 at 3 n.1).  The Court

2    addresses each of Respondent's objections to Intervenors' discovery requests.

3                    **A.    Respondent's General Objections**

4                        **i.    Respondent's Extraterritorial Assets**

5            Respondent objects to production of information related to its extraterritorial

6    assets on the ground that the Court lacks jurisdiction to authorize Intervenors to attach or

7    execute against assets located outside the United States, and that any related discovery is

8    thus unlikely to lead to any relevant assets.[4]

9            Regardless of whether this Court lacks authority to permit execution against assets

10   located in other countries, Intervenors are entitled to obtain discovery of Respondent's

11   assets both within and outside of the United States.  In *NML Capital*, the U.S. Supreme

12   Court assumed that district courts are within their discretion "to order the discovery of

13   third-party banks about the judgment debtor's assets located outside the United States."

14   573 U.S. at 140.  The Supreme Court went on to hold that the Foreign Sovereign

15   Immunities Act ("FSIA"), 28 U.S.C. §§ 1130, 1602, does not immunize a foreign-

16   sovereign judgment debtor from postjudgment discovery of information concerning its

17

18   _____

19   [4] Relatedly, Respondent contends that Intervenors seek information about Respondent's dealings with the
     Government of India, as well as communications with the Liquidator, which will "further embroil this
20   Court in matters that have absolutely no connection to the United States"; and it appears to revive its
     argument that this matter should have been dismissed based on the doctrine of *forum non-conveniens*.
21   Resp. to Mot. to Compel (docket no. 119 at 23).  The Court has already declined to dismiss this action on
     that ground, *see* Minute Order at ¶ 1(b) (docket no. 28), and has appropriately considered comity interests
     and the burden that discovery might cause to Respondent and the Government of India.  *See NML*
22   *Capital*, 573 U.S. at 146 n.6.

23

ORDER - 13

1   extraterritorial assets; and it expressly rejected Argentina's argument that "if a judgment

2   creditor could not ultimately execute a judgment against certain property, then it has no

3   business pursuing discovery of information pertaining to that property." *NML Capital*,

4   573 U.S. at 144.  The *NML Capital* Court explained that "information about Argentina's

5   worldwide assets generally" allowed the judgment creditor to "identify where Argentina

6   may be holding property that *is* subject to execution." *Id.* at 145 (emphasis in original);

7   *see also SAS Inst., Inc. v. World Programming Ltd.*, No. 10-CV-25-FL, 2018 WL

8   1144585, at *4 (E.D.N.C. Mar. 2, 2018) (concluding that a judgment creditor "should be

9   entitled to discover where and in what amounts [a judgment debtor] has assets outside of

10  the United States to enable it to make . . . fully informed decisions about pursing or

11  continuing execution proceedings abroad").  Respondent fails to address these cases or

12  point to any other authority indicating that a district court is precluded from ordering

13  postjudgment discovery simply because that same court lacks jurisdiction with respect to

14  the attachment or execution against extraterritorial assets.[5]

15       Notwithstanding this conclusion, the Court agrees with Respondent that certain

16  discovery requests involving Respondent's assets and asset transfers are overbroad and

17

18

19  _____

20  [5] The Court notes that in October 2020, Intervenors DEMPL, Telcom Devas, and CC/Devas obtained a
    separate arbitral award against the Government of India by the Arbitral Tribunal of the United Nations
21  Commission on International Trade Law ("UNCITL") seated in the Hauge, the Netherlands, *see* UNCITL
    Award, Ex. 1 to Champion Decl. (docket no. 114-1), and that Petitioner and/or Intervenors have sought to
22  enforce this Award in courts throughout Europe, including France and the United Kingdom.  *See* Petition
    at ¶¶ 37–39 (docket no. 1).

23

1    unduly burdensome.  The Court addresses these issues in connection with its discussion

2    of Respondent's specific objections in Section 4(B) below.

3                    **ii.        Respondent's Purported Alter Egos**

4           Respondent also objects to any discovery related to Respondent's relationship with

5    the Government of India or NewSpace, arguing that such discovery is unlikely to lead to

6    any recoverable assets because neither entity can be joined in this action on account of

7    their foreign sovereign immunity,[6] and because the International Chamber of Commerce

8    ("ICC") tribunal has already found that Respondent and the Government of India are

9    separate legal entities.

10          Intervenors are not precluded from obtaining certain discovery related to

11   Respondent's relationship with the Government of India and NewSpace.  *See* Fed. R.

12   Civ. P. 69(a)(2) (concluding judgment creditors and successors in interest "may obtain

13   discovery from *any person*, including the judgment debtor") (emphasis added).

14   Discovery of a third party's assets is permitted so long as the relationship between the

15   third party and the judgment debtor "is sufficient to raise a reasonable doubt about the

16   bona fides of [any] transfer of assets between them."  *Credit Lyonnais*, 160 F.3d at 431;

17   *see also Brown v. Sperber-Porter*, No. 16-2801, 2017 WL 11482463, at *7 (D. Ariz.

18   Dec. 8, 2017) (permitting discovery of "information relevant to the judgment

19   enforcement proceedings," considering "the liberal discovery Rule 69(a) permits for

20   _____

21   [6] Respondent, however, appears to concede that a foreign state cannot avail itself of the protections of the
     FSIA when a party seeks to confirm an arbitral award against a foreign state, as in this case.  *See* 28
22   U.S.C. §§ 1604 & 1605(a)(6); *see also* Resp. to Mot. to Compel (docket no. 119 at 20).

23

1    judgment creditors, and the relationship between [the judgment creditor] and [third-party

2    intervenors'] bank accounts at issue").

3        Respondent challenges this conclusion on the ground that the ICC tribunal already

4    found that Respondent is not an alter ego of the Government of India.  *See* Award at

5    ¶¶ 221–26, Ex. 1 to Hellmann Decl. (docket no. 2-1).  Respondent exaggerates the import

6    of this finding.  When the ICC tribunal issued the Award in 2015, it could not have

7    possibly resolved whether Respondent has transferred or is transferring assets or business

8    operations to NewSpace or any other government-affiliated entity during the period from

9    2019 to the present.  Nor could the ICC tribunal have resolved whether Respondent has

10   transferred or is transferring such assets to avoid paying any amounts due with respect to

11   the Award that the ICC tribunal had issued years earlier.

12       Nevertheless, the Court again agrees with Respondent that certain discovery

13   requests concerning Respondent's relationship with the Government of India and

14   NewSpace are overbroad and unduly burdensome, and the Court addresses these issues in

15   Section 4(B) below.

16           **iii.        Intervenors' Obligation to Not Seek Double Recovery**

17       Respondent also argues that it need not produce the requested discovery related to

18   the Government of India or NewSpace because Intervenors are attempting to enforce a

19   separate arbitral award directly against the Government of India and they "cannot recover

20   a penny more than the compensation that they were awarded in" that arbitration.  Mot. for

21   Prot. Ord. (docket no. 115 at 23).  Respondent then leaps to the conclusion that

22   "Intervenors do not need such discovery," so it would be a "pointless" and "extremely

23

1   expensive and burdensome[] endeavor" to permit them to seek such discovery.  *Id.* at 23–

2   24.  Respondent notably fails to mention that Intervenors have not actually recovered *any*

3   amounts due in connection with the separate arbitral award, meaning the risk of double

4   recovery is merely hypothetical at this point.  *See* Champion Decl. at ¶ 33 (docket

5   no. 114).  Respondent also fails to cite any authority that Intervenors are precluded from

6   *seeking discovery* to aid execution of this Judgment on behalf of Petitioner simply

7   because they obtained a separate arbitral award against the Government of India.

8   Assuming that Intervenors actually recover amounts due in connection with the other

9   award, Intervenors might then be precluded from executing the full amount of this

10   Judgment to avoid double recovery, whenever that time comes.  Until then, Intervenors

11   are entitled to discover Respondent's assets, as well as Respondent's relationships with

12   the Government of India and NewSpace.  *See Credit Lyonnais*, 160 F.3d at 431.[7]

13                  **iv.        Respondent's Other General Objections**

14           Although Respondent did not address its other general objections in its motion for

15   a protective order, or its response to Intervenors' motion to compel, some of

16   Respondent's objections warrant further discussion.  *See* Resp. & Obj. to Interrog. &

17   RFPs (docket no. 116-3).  For example, Respondent objects to certain requests on the

18   ground that Federal Rule of Civil Procedure 69 "requires that discovery 'be tailored to the

19

20   ───────────────

    [7] Respondent also argues, in a conclusory fashion, that Intervenors seek such discovery merely to "gin up
21   new claims against India."  *See* Mot. for Prot. Ord. (docket no. 115 at 24).  To the contrary, the record
    demonstrates that Intervenors have legitimate interests in defending this Award and their separate
22   arbitration award against the Government of India, as well as enforcing this Judgment on behalf of
    Petitioner.

23

1    specific purpose of enabling a judgment creditor to discover assets upon which it can

2    seek to execute a judgment.'"  *Id.* (*see* Gen. Obj. Nos. 3 & 5) (citing *E.I. DuPont de*

3    *Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012)).  The Court

4    agrees and will address Respondent's concerns in Section 4(B).

5          Respondent also objects to the date range of Intervenors' discovery requests, from

6    July 1, 2011, to present, as overbroad.  *See* docket no. 116-3 (Gen. Obj. No. 6).  Again,

7    the Court agrees and shall limit the date range of such requests from **<u>September 14,</u>**

8    **<u>2015</u>**, the date of the Award, to the present.  Intervenors have already agreed to this

9    timeframe.  *See* Resp. to Mot. for Prot. Ord. (docket no. 117 at 3 n.1).

10          Finally, Respondent objects to Intervenors' discovery requests to the extent that

11   they call for information protected by attorney-client privilege or another privilege, *see*

12   docket no. 116-3 (Gen. Obj. No. 8).  To the extent Respondent withholds materials on the

13   basis of a privilege, Respondent is DIRECTED to file the required privilege log with the

14   Court on or before **September 17, 2021**.

15                      **B.     Respondent's Specific Objections**

16          Respondent makes specific objections to each of the seven interrogatories and ten

17   RFPs, as well as the notice of deposition.  *See* Resp. & Obj. to Interrog. & RFPs, Ex. C to

18   Meehan Decl. (docket no. 116-3):

19          **Interrogatories Nos. 1 and 2:**  Respondent objects to these interrogatories on the

20   ground that they are overbroad and/or not reasonably calculated to reveal executable

21   assets (as well as on grounds that have already been rejected by this Court).  The Court

22   concludes that these interrogatories are reasonably calculated to reveal executable assets

23

ORDER - 18

1   and thus DENIES Respondent's motion for a protective order with respect to

2   interrogatories nos. 1 and 2, and DIRECTS Respondent to answer these interrogatories on

3   or before **September 17, 2021**, subject to any privilege issues and subject to and as

4   consistent with this Order.

5        **Interrogatory No. 4:**  Respondent objects to this interrogatory on the ground that

6   it is overbroad, unduly burdensome, and not reasonably calculated to reveal executable

7   assets.  The Court agrees that the request for information regarding financial and in-kind

8   transfers "over *$10,000* in each calendar year that Antrix paid to . . . *any third party*" is

9   overbroad and unduly burdensome.  *See* docket no. 116-3 (emphasis added).  The Court

10  therefore GRANTS in part Respondent's motion for a protective order with respect to

11  interrogatory no. 4 and REVISES this interrogatory as follows:

12       Identify and describe all financial and in-kind transfers over **$50,000** in
         each calendar year that Antrix paid to India or NewSpace **on or after**
13       **September 14, 2015**, or to any third party **on or after November 4, 2020**.

14       **Interrogatories Nos. 3, 5, 6, and 7:**  Respondent objects to these interrogatories

15  on the ground that they are overbroad, unduly burdensome, and not reasonably calculated

16  to reveal executable assets.  The Court agrees and hereby GRANTS Respondent's motion

17  for a protective order with respect to interrogatories nos. 3, 5, 6, and 7, and STRIKES

18  these interrogatories.

19       **RFPs Nos. 3, 9, and 10:**  Respondent objects to these RFPs on the ground that

20  they are overbroad, unduly burdensome, and/or not reasonably calculated to reveal

21  executable assets.  The Court concludes that such RFPs are reasonably calculated to

22  reveal executable assets, DENIES Respondent's motion for a protective order with

23

ORDER - 19

respect to RFPs nos. 3, 9, and 10, and DIRECTS Respondent to produce the requested, non-privileged documents on or before **September 17, 2021**, subject to and as consistent with this Order.

**RFPs Nos. 1, 2, 5, 7, and 8:**  Respondent objects to these RFPs on the ground that they are overbroad, unduly burdensome, and/or not reasonably calculated to reveal executable assets.  The Court agrees that these RFPs are not reasonably calculated to reveal executable assets and thus GRANTS in part Respondent's motion for a protective order with respect to RFPs nos. 1, 2, 5, 7, and 8, and REVISES these RFPs as follows:

> *RFP No. 1*:  All communications **from September 14, 2015**, between **Respondent** and the Liquidator **concerning Respondent's financial assets, property, and any other assets valued at more than $50,000**.

> *RFP No. 2*:  All documents and communications **on or after September 14, 2015**, reflecting any transfer of accounts, transfer of assets, contracts, business, revenues, "business segments," business opportunities, functions, personnel, intellectual property, customer relationships, or any other thing **valued at more than $50,000** from **Respondent** to NewSpace.

> *RFP No. 5*:  All documents **dated on or after September 14, 2015**, reflecting payments over **$50,000 that Respondent** ha**s** made to **any** entit**y** in the U.S.

> *RFP No. 7*:  All documents **dated on or after September 14, 2015**, reflecting communications between and among **Respondent**, India, or NewSpace, or any combination thereof, **concerning** documents reflecting communications regarding the transfer of business from **Respondent** to NewSpace.

> *RFP No. 8*:  All documents **dated on or after September 14, 2015**, reflecting amounts over **$50,000** owed to **Respondent**.

**RFPs Nos. 4 and 6:**  Respondent objects to these RFPs on the ground that they are overbroad, unduly burdensome, and/or not reasonably calculated to reveal executable

1   assets.  The Court agrees and hereby GRANTS Respondent's motion for a protective

2   order with respect to RFPs nos. 4 and 6, and STRIKES these RFPs.

3          In sum, Intervenors' motion to compel discovery, docket no. 112, is GRANTED in

4   part as to Intervenors' authority to obtain certain information related to Respondent's

5   assets and asset transfers, both within and outside of the United States, and related to

6   Respondent's relationship to the Government of India and NewSpace, subject to and as

7   consistent with this Order.  Intervenors' motion to compel is otherwise DENIED.

8          Respondent's motion for a protective order, docket no. 115, is GRANTED in part

9   as to (i) interrogatory no. 4, which is revised, (ii) interrogatories nos. 3, 5, 6, and 7, which

10  are stricken, (iii) RFPs nos. 1, 2, 5, 7, and 8, which are revised, and (iv) RFPs nos. 4 and

11  6, which are stricken, as the Court finds these discovery requests to be overbroad, unduly

12  burdensome, and not reasonably calculated to reveal executable assets.  Respondent's

13  motion for a protective order is otherwise DENIED.

14  **<u>Conclusion</u>**

15         For the foregoing reasons, the Court ORDERS:

16         (1)     Intervenors' motion to compel discovery, docket no. 112, is GRANTED in

17  part and DENIED in part;

18         (2)     Respondent's motion for a protective order, docket no. 115, is GRANTED

19  in part and DENIED in part;

20         (3)     Respondent is hereby ORDERED to answer Intervenors' interrogatories,

21  produce the responsive documents, and comply with any notices of deposition, *see* docket

22

23

no. 114-28, subject to and as consistent with this Order, *see* Section 4(B), and to file any

necessary privilege log with the Court, on or before **September 17, 2021**; and

(4)     The Clerk is directed to send a copy of this Order to all counsel of record,

to the Liquidator via email addressed to ol-bangalore-mca@nic.in, and to the United

States Court of Appeals for the Ninth Circuit (Case No. 20-36024).

IT IS SO ORDERED.

Dated this 16th day of August, 2021.

Thomas S. Zilly
United States District Judge

ORDER - 22